718 S.E.2d 426

In the Matter of Amanda Graham **STEINMEYER**, Respondent.

No. 27057.

Supreme Court of South Carolina.

Submitted Sept. 26, 2011.

Decided Oct. 24, 2011.

Lesley M. Coggiola, Disciplinary Counsel, and Ericka M. Williams, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Amanda Graham Steinmeyer, of West Columbia, pro se.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to the imposition of a definite

suspension not to exceed two (2) years or disbarment. She requests that the suspension or disbarment be made retroactive to the date of her interim suspension, December 2, 2010. *In the Matter of Steinmeyer*, 390 S.C. 437, 702 S.E.2d 558 (2010). Respondent further agrees to pay the costs incurred by ODC and the Commission on Lawyer Conduct (the Commission) in the investigation and prosecution of this matter. She agrees to complete the Legal Ethics and Practice Program Ethics School and Trust Account School prior to reinstatement and, as set forth further in this order, to reimburse the complainants and/or Lawyers' Fund for Client Protection (Lawyers' Fund) prior to seeking reinstatement or returning to the active practice of law.

We accept the agreement and disbar respondent from the practice of law in this state, retroactive to the date of her interim suspension, December 2, 2010. Within thirty (30) days of the date of this order, respondent shall enter into a payment plan with the Commission setting forth the terms for repayment of costs. Prior to petitioning for reinstatement, respondent shall complete the Legal Ethics and Practice Program Ethics School and Trust Account School. Further, as set forth in this order, respondent shall reimburse the complainants and/or Lawyers' Fund prior to seeking reinstatement or returning to the active practice of law.

The facts, as set forth in the agreement, are as follows.

## FACTS

### Matter I

In 2007, respondent self-reported witnessing her former employer, a lawyer, violate several provisions of the Rules of Professional Conduct. Respondent reported that the lawyer's violations occurred as early as 2004 and admits that her self-report in 2007 was untimely.

### Matter II

While employed with Complainant A's law firm, respondent settled an underinsured claim for a client. Respondent did not deposit the settlement draft in the law firm's escrow account, but, instead, deposited the settlement in her personal

bank account and paid the client the entire share of the settlement from her personal account.

## Matter III

Respondent's office served a legal notice entitled "Application for Ejectment (Eviction)" on Complainant B's client. The document appeared to be under the signature of a magistrate. Thereafter, respondent brought a Rule to Show Cause for ejectment based on the document. The court verified the document was neither issued by the court nor the magistrate.

Respondent represents the document was her draft copy and that she had instructed her secretary to prepare a proposed order with the information contained on the draft copy. Respondent represents she was out of town for a funeral when the document was executed. Respondent further represents that the document was signed by her secretary and then notarized and executed in her absence.

## Matter IV

Respondent had a trust account with BB & T Bank. Respondent admits that, in early June 2010, checks in the amount of $149.00 and $177.51 were presented against the account. The trust account lacked sufficient funds to honor the checks. Respondent admits the checks were issued to pay non-client related expenses.

On June 15, 2010, a check in the amount of $1,400.00 was presented against respondent's trust account. The trust account lacked sufficient funds to honor the check. Respondent admits the check was issued to pay a client, but the $1,400.00 used to pay the client belonged to a different client.

ODC served respondent with a subpoena requesting copies of all of her trust account records required to be maintained pursuant to Rule 417, SCACR, for the period between June 1, 2009, and June 31, 2010. By letter dated February 24, 2011, ODC again requested the documents. To date, respondent has not furnished any trust account records.

Respondent represents she failed to maintain records as required by Rule 417, SCACR. In particular, respondent failed to maintain receipt and disbursement journals, ledger records, bills, disbursement sheets, checkbook registers or

check stubs, bank statements, records of deposit, and monthly reconciliation statements. Further, respondent admits that she failed to reconcile her trust account and, in that regard, also failed to comply with the requirements of Rule 417, SCACR.

## Matter V

Respondent represented Complainant C in a Workers' Compensation action that was settled in March 2009. The agreement was approved by the Workers' Compensation Commission. The terms of the agreement provided that Complainant C would receive a lump sum payment of $20,000.00 and weekly payments of $533.44 for one hundred and eleven (111) weeks directly from the State Accident Fund, in addition to other payments for a total award of $120,000.00.

In error, the State Accident Fund issued a check to respondent for the total amount of $120,000.00. Respondent deposited the $120,000.00 check directly into her checking account and paid Complainant C the $20,000.00 lump sum as outlined in the Workers' Compensation Agreement. Respondent retained the $100,000.00 balance in her checking account. From April 2009 until February 2010, respondent made weekly deposits into Complainant C's bank account. Many of the weekly payments were untimely.

Beginning in March 2010, respondent began making monthly deposits into Complainant C's bank account. The monthly payments were inconsistent in date paid and in amount paid. One payment in the amount of $1,400.00 was returned by the bank for insufficient funds. The check was written on respondent's trust account and was paid using funds belonging to another client.

Respondent led Complainant C to believe the payments into Complainant C's bank account were coming directly from the State Accident Fund when in fact it was respondent who was depositing the payments into Complainant C's account. Ultimately, respondent paid $56,448.90 of the $58,778.50 owed to Complainant C.

Respondent provided false information and testimony to ODC regarding this matter. In respondent's written response to the complaint, respondent stated:

[Respondent] denies that each week Complainant C has to call her about a payment but does acknowledge that some weeks the payments were late as customarily happens with worker's comp carriers sending payments to claimants and [respondent] further states that each week she did everything possible to assist claimant in getting her payment received as expeditiously as possible.

Respondent also stated:

The carrier did decide to go to a monthly schedule in April 2010 and I understand some months they have paid on time and some months they have been a few days late and again when they are late and [respondent] has received a call from Complainant C, she has done everything possible to assist claimant in getting her payment received as expeditiously as possible.

Respondent was issued a Notice to Appear and give testimony under oath. In respondent's first appearance, she initially denied that she ever received a check from the State Accident Fund in the amount of $120,000.00. During the same interview, she later acknowledged that she had received the $120,000.00 check, but stated she instructed her secretary to return the check to the State Accident Fund. Respondent denied negotiating the check.

In a separate interview, ODC presented a copy of the executed $120,000.00 check. Respondent then admitted under oath that she had received, endorsed, and deposited the check into her checking account. Respondent also endorsed Complainant's C's name on the check.

## Matter VI

Respondent had a trust account with BB & T Bank. She admits that, on or about October 19, 2010, checks in the amount of $8.31, $30.21, $80.12, and $120.82 were presented against her trust account. At the time the checks were presented, the trust account lacked sufficient funds to honor the checks. Respondent admits that the checks were issued to pay non-client related expenses.

On October 26, 2010, checks in the amount of $30.21, $80.12, and $120.82 were presented against the trust account. The trust account lacked sufficient funds to honor the checks.

Respondent represented the $80.12 and $120.82 checks had been renegotiated by the bank in an attempt to honor the checks presented on October 19, 2010. Respondent admits the $30.21 check was issued to pay a non-client related expense.

On November 16, 2010, three checks in the amount of $30.00 each were presented against respondent's trust account. At the time of presentment, the account lacked sufficient funds to honor the checks. Respondent admits these checks were issued to pay non-client related expenses.

Review of respondent's trust account statements from BB & T Bank revealed numerous checks written to "cash" in amounts ranging from $149.00 to $3,500.00 and numerous account transfers from respondent's trust account to respondent's checking account in amounts ranging from $300.00 to $4,600.00.

## *Matter VII*

Respondent represented Complainant D in a Workers' Compensation action that was settled in June 2010. On or about August 17, 2010, respondent was issued a check from the State Accident Fund in the amount of $60,000.00. Respondent endorsed her name and Complainant D's name on the check and then deposited the funds into her trust account. Respondent endorsed Complainant D's name without Complainant D's knowledge or consent.

Respondent failed to pay Complainant D any of the $60,000 settlement proceeds. Instead, respondent used the funds belonging to Complainant D for respondent's personal benefit and the benefit of other clients.

By letter dated December 9, 2010, respondent was issued a Notice of Investigation and a request for a response within fifteen (15) days. When no response was received, ODC sent respondent a "Treacy"[1] letter by certified mail which requested an immediate response to the Notice of Investigation. To date, respondent has failed to submit a written response to the Notice of Investigation.

---

1. *See In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).

### Matter VIII

On October 10, 2010, respondent and a co-defendant were arrested and charged with distribution or possession with intent to distribute a Schedule IV drug, possession of prescription medication in an unlabeled container, possession of less than one gram of meth or cocaine base, and open container. Additionally, respondent was charged with driving under the influence, 1st offense.

On October 11, 2010, respondent pled guilty to the driving under the influence and open container charges. Respondent was allowed to enroll in a Pre–Trial Intervention Program on the charges of distribution or possession with intent to distribute a Schedule IV drug, possession of prescription medication in an unlabeled container, and possession of less than one gram of meth or cocaine base. Respondent has now successfully completed a Pre–Trial Intervention Program.

### Matter IX

Respondent represented Complainant E in a civil dispute between Complainant E and her neighbor. In March 2010, respondent wrote a letter to Complainant E's neighbor. Complainant E then requested respondent file an action against the neighbor.

On March 30, 2010, Complainant E paid respondent $190.00, representing court costs and filing fees, to file the action. Respondent did not file the action. Respondent did not expedite the case as requested by Complainant E. Respondent failed to adequately communicate with Complainant E regarding the status of the case and failed to promptly respondent to Complainant E's requests for copies of documents. Respondent did request the attorney appointed to protect the interests of her clients pursuant to Rule 31, RLDE, Rule 413, SCACR, refund $190.00 from respondent's expense account following the filing of the complaint.

### LAW

Respondent admits that, by her misconduct, she has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client);

Rule 1.4 (lawyer shall keep client reasonably informed about the status of matter and promptly comply with reasonable requests for information); Rule 1.15 (lawyer shall hold funds belonging to clients or third persons separately from lawyer's personal account; lawyer shall maintain funds belonging to clients and third parties on deposit in trust account; upon receiving funds in which third person has an interest, lawyer shall promptly deliver funds to the third person); Rule 3.2 (lawyer shall make reasonable efforts to expedite litigation consistent with interests of client); Rule 4.1 (in course of representing client, lawyer shall not knowingly make false statement of material fact to a third person); Rule 5.3 (lawyer who possesses managerial authority in law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that non-lawyer's conduct is compatible with professional obligations of lawyer); Rule 8.1(a) (in connection with disciplinary matter, lawyer shall not knowingly make false statement of material fact); Rule 8.1(b) (lawyer shall not knowingly fail to respond to lawful demand for information from disciplinary authority); Rule 8.3 (lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate professional authority); Rule 8.4(a) (it is professional misconduct for a lawyer to violate the Rules of Professional Conduct); Rule 8.4(b) (it is professional misconduct for lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice). Respondent further admits she violated the financial recordkeeping provisions of Rule 417, SCACR. In addition, she admits she wrote checks payable to "cash" on her trust account and failed to perform monthly reconciliations of her trust account, both in violation of Rule 417, SCACR.

Respondent admits her misconduct is grounds for discipline under Rule 7, RLDE, of Rule 413, SCACR, specifically Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate

Rules of Professional Conduct), Rule 7(a)(3) (it shall be ground for discipline for lawyer to willfully fail to comply with a subpoena issued under Rule 413, SCACR, or knowingly fail to respond to a lawful demand from a disciplinary authority to include a request for a response), and Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law).

## CONCLUSION

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law, retroactively to the date of her interim suspension. Within thirty (30) days of the date of this opinion, respondent shall enter into a payment plan with the Commission for repayment of costs incurred by ODC and the Commission in the investigation and prosecution of this matter.

Prior to seeking reinstatement, respondent shall complete the Legal Ethics and Practice Program Ethics School and Trust Account School. Prior to seeking reinstatement or returning to the active practice of law, respondent shall reimburse Complainant C $2,329.60 and shall reimburse Complainant D $60,000.00. If Complainant C and/or Complainant D are reimbursed by the Lawyers' Fund, the amount due the complainants shall be reduced accordingly, and respondent shall reimburse the Lawyers' Fund for its payments to the complainants prior to seeking reinstatement or returning to the active practice of law.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that she has complied with Rule 30 of Rule 413, SCACR, and shall also surrender her Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.